UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UPSTATE NEW YORK ENGINEERS HEALTH FUND, by Daniel P. Harrigan, as Administrator; UPSTATE NEW YORK ENGINEERS PENSION FUND, by Daniel P. Harrigan, as Administrator; UPSTATE NEW YORK ENGINEERS S.U.B. FUND, by Daniel P. Harrigan, as Administrator; UPSTATE NEW YORK ENGINEERS TRAINING FUND, by Theron Hogle and Eugene Hallock, as Trustees; LOCAL 106 TRAINING AND APPRENTICESHIP FUND, by Daniel J. McGraw and Eugene Hallock, as Trustees; CENTRAL PENSION FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS AND PARTICIPATING EMPLOYERS, by Michael R. Fanning, as Chief Executive Officer; UPSTATE NEW YORK OPERATING ENGINEERS, LOCAL 158, by Daniel McGraw, as Business Manager,<br><br>                              Plaintiffs,<br><br>        – against –<br><br>JOHN F. AND JOHN P. WENZEL CONTRACTORS, INC., MARK C. SQUIRES, Individually and as an Officer of John F. and John P. Wenzel Contractors, Inc. and DAVID W. SQUIRES, Individually and as an Officer of John F. and John P. Wenzel Contractors, Inc.,<br><br>                              Defendants. | AFFIDAVIT IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER<br><br>Civil Action No. 5:17-CV-00570 (LEK/DEP) |

DISTRICT OF COLUMBIA          )
U.S.A.                                        ) ss.:

MICHAEL A. CRABTREE, being duly sworn, deposes and says:

1.    I am the current Chief Executive Officer of Plaintiff Central Pension Fund of the International Union of Operating Engineers and Participating Employers ["Central Pension Fund"], and was formerly Fund Counsel during the period September 1994 to December 31, 2018. My predecessor, Michael R. Fanning, retired from the Central Pension Fund on December 31, 2017.

2.    I submit this affidavit in support of Plaintiffs' motion to strike Defendants' defenses and for a protective order to preclude certain depositions, to limit the scope of

{B0056560.1}

discovery, and to request that the Court direct the Defendants to pursue more cost effective and less expensive means of authenticating documents.

3. As Chief Executive Officer, I am responsible for, among other things, implementing and administering the plan of benefits of the Central Pension Fund. I am also familiar with the operation and administration of the Central Pension Fund prior to January 1, 2018.

4. The UNY Engineers Funds and particularly, its Administrator Daniel Harrigan, were collection agent for the Central Pension Fund, pursuing collection of monies owed the Central Pension Fund and remitting employer payments to the Central Pension Fund.

5. The Central Pension Fund is a pension benefit plan jointly-administered by a Board of Trustees consisting of union representatives and employer representatives. It was established and it is maintained by employee organizations and employers pursuant to an Agreement and Declaration of Trust to provide retirement benefits to eligible participants. [A copy of relevant portions of the Restated Agreement and Declaration of Trust of the Central Pension Fund is attached hereto as Exhibit "A].

6. As Chief Executive Officer of the Central Pension Fund and former Fund Counsel, I can authenticate the Central Pension Fund's Trust and Collections Policy. Further, if I review the documents, I can identify those provisions of the documents concerning an employer's contribution obligations, the deadline for remittances, and the rates of interest and liquidated damages.

7. I am not able to testify as to the calculation of interest and liquidated damages, the exact amount of the Defendants' delinquency, payments made by the Defendants, prior

audits conducted of the Defendants' books and records, Defendants' history with Plaintiffs, or the amount of audit fees, or attorneys' fees and costs incurred by the Plaintiffs in pursuing Defendants' delinquency. All of these matters are within the knowledge of the UNY Engineering Funds accounting department, Fund Administrator Daniel Harrigan, Joseph W. McCarthy & Associates and Fund Counsel Jennifer A. Clark.

8. I have no personal knowledge concerning Defendant Corporation, the identity of any projects where it performed work, the type of work performed by Defendant Corporation, the operation of Defendant Corporation, the identity of the Defendant Corporation's officers, or the identity of those persons at Defendant Corporation who decided which bills to pay and when to pay those bills, including when to pay obligations to Plaintiffs and how much to pay to Plaintiffs.

9. I have never had any conversations with the Defendants or any representative of the Defendants. Further, my office did not send any correspondence to Defendants or any representative of the Defendants concerning their debt for January 2014 to date.

10. The Central Pension Fund did not know that Defendants had a delinquency with Plaintiffs until after Defendants' account had been referred to Fund Counsel Clark in September 2016. And, this office did not know the amount of Defendants' delinquency with Plaintiffs until after Joseph W. McCarthy and Associates issued its payroll audits, dated October 16, 17 and 18, 2017 and May 22, 2018.

11. Defendants contend that there was an alleged past practice between the Plaintiffs and Defendants whereby Defendants were relieved of an obligation to remit contributions to the Plaintiff Funds with respect to those employees who were not members of

{00056960.1}                                    3

the Union ["non-union people"] and who performed work covered by the CBAs. I have no knowledge of any alleged past practice. As the current Chief Executive Officer of the Central Pension Fund and former Fund Counsel, I can state that there was no such practice with the Defendants.

12.    Defendants contend that there was an oral agreement with the Union whereby they could perform operating engineers' and mechanics' work using non-union people without complying with the collective bargaining agreements ["CBAs"]. I am not a representative of the Union, I am not affiliated with the Union, and I have no knowledge of the Union's operations or its business. I have no personal knowledge of such an alleged oral agreement.


WHEREFORE, I respectfully request that the Court: (1) strike Defendants' fifth affirmative defenses; (2) preclude Defendants from pursuing discovery to show a past practice or alleged oral agreement to modify the CBAs; (3) preclude Defendants from deposing certain witnesses, including myself; and (4) direct the Defendants to proceed with a more cost effective and inexpensive method of authenticating documents and addressing the clear and unambiguous terms of the parties' contracts.

MICHAEL A. CRABTREE

Sworn to before me this
3rd day of August, 2018.

Notary Public

{80056960.1}                                    4

# EXHIBIT "A"

# Restated Agreement

# and

# Declaration of Trust

# of the

# CENTRAL PENSION FUND

# of the

# International Union of Operating Engineers

# and

# Participating Employers

JANUARY 16, 2004

WHEREAS, there has heretofore been entered into an Agreement and Declaration of Trust, effective the 7th day of September, 1960, by and between the undersigned Employer Trustees and Employer Trustees who, together with the Successor Trustees designated in the manner hereinafter provided, created a pension fund as herein provided; and

WHEREAS, said Agreement and Declaration of Trust has heretofore been amended; and

WHEREAS, under Article X of said Agreement and Declaration of Trust, the Trustees have the power and authority to amend such Agreement and Declaration of Trust from time to time as therein provided; and

WHEREAS, it is determined to be desirable to amend said Agreement and Declaration of Trust and to restate the same so as to incorporate therein all of the amendments adopted heretofore or as part of this restatement;

NOW, THEREFORE, the Trustees, designated and in office, as such, have executed this Restated Agreement and Declaration of Trust as indicating their acceptance of the respective duties imposed upon them as Trustees under the terms of this Agreement, to read as follows:

WHEREAS, the International Union of Operating Engineers and certain Local Unions affiliated with the International Union have now and will hereafter have in effect agreements with certain Employers requiring payments by the Employers into a Trust Fund for the purpose of providing and maintaining benefits for certain Employees; and

WHEREAS, the International Union and each such Local Union and each Employer which accepts this Agreement and Declaration of Trust and agrees to be bound by the provisions hereof shall, upon acceptance by the Trustees, be deemed a party to this Agreement and Declaration of Trust; and

WHEREAS, to effect the aforesaid purpose it is desired to establish and maintain a Trust Fund which will conform to the applicable requirements of the Labor-Management Relations Act of 1947, as amended, the Employee Retirement Income Security Act of 1974, as amended, and qualify as a "qualified Plan" and as an "exempt Trust" pursuant to the International Revenue Code, Sections 401, 501(a) and other pertinent provisions thereof; and

WHEREAS, the said Trust Fund is to be known as the "Central Pension Fund of the International Union of Operating Engineers and Participating Employers"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to be established and administered; and

- 1 -

WHEREAS, the sums payable to the Fund as aforesaid, are for the purposes of providing pension benefits and other conventional forms of retirement, disability and related benefits as now are or may hereafter be authorized or permitted by law for eligible employees, their families, dependents and beneficiaries as determined hereunder; and

WHEREAS, the Trustees have been duly appointed in accordance with the provisions of this Agreement;

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements herein contained, it is hereby agreed as follows:

- 2 -

## ARTICLE I

### Definitions

**Section 1.1 Employer.** The term "Employer" as used herein shall mean:

(a)     An employer who is a member of, or is represented in collective bargaining by, an association and who is bound by a collective bargaining agreement with the Union providing for the making of payments to the Trust Fund with respect to employees represented by the Union.

(b)     An employer who is not a member of, nor represented in collective bargaining by, an association, but who has duly executed or is bound by a collective bargaining agreement with the Union providing for the making of payments to the Trust Fund with respect to employees represented by the Union.

(c)     The Union which, for the purpose of making the required contributions into the Trust Fund, shall be considered as the Employer of the Employees of the Union for whom the Union contributes to the Trust Fund.

(d)     An employee benefit fund established by a Local Union which, for purposes of making the required contributions into the Trust Fund, shall be considered as the Employer of the Employees of the employee benefit fund for whom the employee benefit fund contributes to the Trust Fund.

(e)     An employer who does not meet the requirements of the definition of "Employer" as stated in subsections (a), (b), (c) and (d) of this Section, but who is required to make payments or contributions to the Trust Fund (1) by any law or ordinance applicable to a State, Territory or Province or to any political subdivision or municipal corporation thereof or (2) pursuant to any written agreement entered into by such employer with such State, Territory or Province or any political subdivision or municipal corporation thereof.

(f)     Employers as described in this Section shall, by the making of payments to the Trust Fund pursuant to such collective bargaining or other written agreements, be deemed to have accepted and be bound by this Trust Agreement.

**Section 1.2 Local Union or Union.** The term "Local Union", as used herein, shall mean any local union affiliated with the International Union of Operating Engineers. The term "Union" as used herein, shall mean the International Union of Operating Engineers.

- 3 -

**Section 1.3 Employee.** The term "Employee" as used herein shall mean:

(a)     Any employee represented by the Union and working for an Employer as defined herein, and with respect to whose employment an Employer is required to make contributions into the Trust Fund.

(b)     An officer or employee of the Local Union who shall have been proposed for benefits under the Trust Fund by the Local Union and who shall have been accepted by the Trustees and for whom the Local Union agrees in writing to contribute to the Trust Fund at the rate fixed for contributions for other Employers.

(c)     An Employee of an Employer, as defined in subsection (d) of Section 1.1, on whose behalf such Employer is required to make payments or contributions to the Trust Fund as provided in subsection (d) of Section 1.1 and at a rate fixed for contributions for other Employers.

(d)     Employees, if any, of this Trust Fund who are not employed by an Employer as defined in Section 1.1, but as shall be proposed and accepted for such benefits by the Trustees. As to such personnel as are employees of the Trust Fund, the Trustees shall be deemed to be an Employer within the meaning of this Trust Agreement and shall provide benefits for said Employees out of said Trust Fund, on the same basis as for other Employees.

(e)     A person, represented by or under the jurisdiction of the Union, who shall be employed by a governmental unit or agency, and on whose behalf payment of contributions shall be made at the times and at the rate of payment equal to that paid by an Employer, defined in Section 1.1 of this Article, in accordance with a written agreement, ordinance or resolution.

**Section 1.4 Participant.** "Participant" means any pensioner, any person receiving benefits as the beneficiary of a deceased Participant, any person who has completed the requirements for a vested benefit, and any employee who worked in covered employment for at least 400 hours in a calendar year. Prior to becoming a Participant, an employee shall not in any event be credited with service; however, this shall not preclude credit for service prior to participation, to the extent provided by this Plan, once an employee has become a Participant.

**Section 1.5 Beneficiary.** The term "Beneficiary" shall mean a person designated by a Participant or by the terms of the Pension Plan created pursuant to this Agreement and Declaration of Trust, who is or may become entitled to a benefit.

**Section 1.6 Trustees.** The term "Trustees" as used herein shall mean the Trustees designated in this Trust Agreement, together with their successors designated and

- 4 -

appointed in accordance with the terms of this Trust Agreement. The Trustees, collectively, shall be the "Administrator" of this Fund as that term is used in the Act.

**Section 1.7 Trust Fund.** "Trust," "Trust Fund" and "Fund" as used herein shall mean the entire trust estate of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers as it may, from time to time, be constituted, including, but not limited to all funds received in the form of contributions, together with all contracts (including dividends, interest, refunds, and other sums payable to the Trustees on account of such contracts), all investments made and held by the Trustees, all income, increments, earnings and profits therefrom, and any and all other property or funds received and held by the Trustees by reason of their acceptance of this Agreement and Declaration of Trust.

**Section 1.8 Trust Agreement.** The terms "Agreement and Declaration of Trust" or "Trust Agreement" as used herein shall mean this instrument, including all amendments and modifications as may from time to time be made.

**Section 1.9 Association.** The term "Association" shall mean such Employer organization as may in conformity with the provisions of this Trust become an "Employer."

**Section 1.10 Act.** The term "Act" as used herein shall mean the Employee Retirement Income Security Act of 1974, any amendments as may from time to time be made and any regulations promulgated pursuant to the provisions of the said Act.

**Section 1.11 Pension Plan.** The term "Pension Plan" shall mean the plan, program, method, rules and procedure for the payment of benefits from the Trust Fund established by the Agreement and Declaration of Trust and amendments thereto.

**Section 1.12 Reciprocity Agreement.** The term "Reciprocity Agreement" as used herein shall mean the Pension Reciprocity Agreement for Operating Engineers Pension Funds and Exhibits "A" and "B" of such Reciprocity Agreement, and such other Reciprocity Agreements adopted in conformity with Section 9.4 of this Agreement.

- 5 -

## ARTICLE II

### Creation and Purposes of Fund

**Section 2.1.** The Trust Fund is created, established and maintained, and the Trustees agree, as they deem to be appropriate, to receive, hold and administer the Trust Fund, for the purpose of providing such benefits as now are, or hereafter may be, authorized or permitted by law for Participants and their Beneficiaries and in accordance with the provisions herein set forth and the Pension Plan. It is intended that this Trust Fund and Pension Plan be a "multiemployer plan" as that term is defined in Section 3(37) of the Act.

- 6 -

## ARTICLE III

### Board of Trustees

**Section 3.1 Number, Appointment, Term.** The Fund shall be administered by Trustees, at least three (3) but not more than five (5) of whom shall be appointed by the Union and shall act as Employee Trustees, and at least three (3) but not more than five (5) of whom shall be appointed by the Employers and shall act as Employer Trustees. The respective Trustees shall serve without compensation and at the will of the Union or the Employers, respectively, appointing them, but they shall be reimbursed for all reasonable and necessary expenses properly and actually incurred by them in connection with the performance of their official duties as such. A vacancy shall occur whenever a Trustee resigns or when a Trustee is removed by the party which appointed him, or by reason of death or incapacity.

**Section 3.2 Resignation and Removal.** A Trustee may resign and become and remain fully discharged from all further duty or responsibility hereunder upon giving thirty (30) days' notice in writing to the remaining Trustees and to the party by whom he was appointed, or such shorter notice as the remaining Trustees may accept as sufficient in which notice shall be stated a date on which such resignation shall take effect; and such resignation shall take effect on the date specified in the notice unless a successor Trustee shall have been appointed at an earlier date, in which event such resignation shall take effect immediately upon the appointment of such successor Trustee.

Any Employee Trustee may be removed at any time by the General President of the International Union of Operating Engineers, and any Employer Trustee may be removed upon a majority vote of the remaining Employer Trustees. Such removed Trustee shall be fully discharged from all further duty and responsibility herein.

**Section 3.3 Successor Trustees, Appointment.** If any Employer Trustee shall die, become incapable of acting hereunder, become inactive, resign, or be removed, a Successor Employer Trustee shall be designated by the remaining Employer Trustees, such appointment to be in writing and to be delivered to the Chairman and Secretary of the Trustees serving at that time. If any Employee Trustee shall die, become incapable of acting hereunder, resign, or be removed, a successor Employee Trustee shall be appointed by the General President of the International Union of Operating Engineers, such appointment to be in writing and be delivered to the Chairman and Secretary of the Trustees serving at that time. It is the intention hereof that the Fund at all times be administered by an equal number of Employer Trustees and Employee Trustees. The written appointment shall state the term, if any, during which the Trustee is to serve, consistent with Section 3.1

**Section 3.4 Successor Trustee, Assumption of Office.** Any successor Trustee shall immediately upon his appointment as a successor Trustee and his acceptance of the Trusteeship in writing, as provided in Section 3.5 become vested with all the property rights, powers and duties of a Trustee hereunder with like effect as if originally named Trustee without the necessity of any formal conveyance or other instrument of title.

**Section 3.5 Acceptance of the Trust by Trustees.** A Trustee shall execute a written acceptance in a form satisfactory to the Trustees and consistent with the Act and thereby shall be deemed to have accepted the Trust created and established by this Trust Agreement and to have consented to act as Trustee and to have agreed to administer the Trust Fund as provided herein. Such written acceptance shall be filed with the Fund's Chief Executive Officer who shall notify the remaining Trustees of the receipt of such acceptance.

**Section 3.6 Limitation of Liability of Trustees.** No Trustee shall be liable or responsible for his own acts except as otherwise provided for by law. No successor Trustees shall in any way be liable or responsible for anything done or committed in the administration of the Trust prior to the date they became a Trustee. The Trustees shall not be liable for the act or omissions of any investment manager, attorney, agent or assistant employed by them in pursuance of this Agreement, if such investment manager, attorney, agent or assistant was selected pursuant to this Trust Agreement and such person's performance was periodically reviewed by the Trustees who found such performance to be satisfactory; provided that nothing herein shall relieve any Corporate Trustee of any liability with regard to the performance of its employees.

**Section 3.7 Office of the Fund.** The principal office of the Trust Fund shall, so long as location is feasible, be located and maintained in the District of Columbia. The location of the principal office shall be made known to the parties interested in the Trust Fund. At such office, and at such other places as may be required by law, there shall be maintained the books and records pertaining to the Trust Fund and its administration.

**Section 3.8 Officers.** The Trustees shall annually select from among themselves a Chairman, and a Secretary to serve for a term of one (1) year commencing at the time of election and continuing until his or their successors have been elected. At no time shall both offices be held by Trustees designated by the same parties. The Secretary or such other person as the Trustees may designate, shall keep minutes and records of all meetings, proceedings and acts of the Trustees and shall, with reasonable promptness, send copies of such minutes and records to all Trustees. The Chairman, and in his absence a Trustee selected by the Trustees, shall preside at all meetings of the Trustees.

**Section 3.9 Power to Act in Case of Vacancy.** No vacancy or vacancies on the Board of Trustees shall impair the power of the remaining Trustees, acting in the manner provided by this Trust Agreement, to administer the affairs of the Trust Fund notwithstanding the existence of such vacancy or vacancies.

- 8 -

**Section 3.10 Meetings; Notices.** The Trustees shall meet at least three times each year and at such other times as they deem it necessary to transact their business. The Chairman or the Secretary of the Board of Trustees may, and upon the written request of any two (2) Trustees shall, call a meeting of the Trustees at any time by giving at least five (5) days' written notice of the time and place thereof to the remaining Trustees. A meeting of the Trustees may be held at any time without notice if all the Trustees consent thereto in writing.

**Section 3.11 Attendance at Meetings; Minutes.** All official meetings of the Trustees shall be attended only by the Trustees and shall not be open to the public, except that there may attend such other persons as may be designated by the Trustees or when invited so to do, and as may be otherwise required by law. Written minutes, which need not be verbatim, a copy of which shall be furnished with reasonable promptness to each Trustee, shall be kept of all business transacted and of all matters upon which voting shall have occurred and the vote of each Trustee shall be recorded. Such minutes shall be approved by the signature of an Employer Trustee and of an Employee Trustee.

**Section 3.12 Quorum; Voting; Action without Meeting.**

(a)     At least two (2) Employer Trustees and at least two (2) Employee Trustees present in person at any meeting of the Board of Trustees shall constitute a quorum for the transaction of business. If at any meeting the number of Employer and Employee Trustees present shall be unequal, then the group of Trustees lesser in number shall be entitled to cast the same number of votes as the other group of Trustees. In the event there shall be present at any meeting less than all of the Trustees of a group and such Trustees shall be unable to agree as to the manner in which the vote of the absent Trustee shall be cast, then action on the matter under consideration shall be postponed and resolved by mail, email and/or facsimile vote.

(b)     A quorum of a committee of the Board of Trustees, established in accordance with Section 5.7 of this Trust Agreement or otherwise, shall be a majority of the members of the committee, except as may be provided otherwise or by law.

(c)     Any action taken by the Trustees, except as herein otherwise provided, shall be by affirmative vote of a majority of the votes cast at a meeting. The Trustees must cast their votes in person, except as provided in subsection (a) of Section 3.12.

(d)     Action by the Trustees on any proposition may also be taken without a meeting if all of the Trustees agree thereon in writing.

**Section 3.13 Manner of Acting in the Event of Deadlock.**

- 9 -

(a)    A deadlock shall be deemed to exist whenever a proposal, nomination, motion or resolution made or proposed by any one of the Trustees is not adopted or rejected by a majority vote and the maker of the proposal, nomination, motion or resolution notifies the remaining Trustees in writing that a deadlock exists.

(b)    In the event of such deadlock arising, the Trustees shall meet for the purpose of agreeing upon an impartial umpire to break such deadlock by deciding the dispute in question. In the event of the inability of the Trustees to agree upon the selection of such impartial umpire within a reasonable time, then, on the petition of either group of Trustees, the senior judge on duty of the District Court of the United States for the District of Columbia shall appoint such impartial umpire. Such impartial umpire shall immediately proceed to hear the dispute between the Trustees and decide such dispute, and the decision and award of such umpire shall be final and binding upon the parties. The reasonable compensation of such umpire and the costs and expenses (including, without limitation, attorneys' and reporter fees) incidental to any proceedings instituted to break a deadlock shall be paid by the Trust Fund.

(c)    Any impartial umpire selected or designated to break a deadlock shall be required to enter his decision within a reasonable time fixed by the Trustees. The scope of any such proceeding before such impartial umpire shall be limited to the provisions of this Trust Agreement and to the provisions of the rules, regulations and bylaws adopted by the Trustees and to the plan of benefits established by them. The impartial umpire shall have no jurisdiction or authority to change or modify the provisions of this Trust Agreement or to decide any issue arising under or involving the interpretation of any collective bargaining agreement between the Union, and the Employers, and such impartial umpire shall have no power or authority to change or modify any provisions of any such collective bargaining agreements.

**Section 3.14 Removal of Trustee (Violation of Act).** The Board of Trustees shall initiate action to cause the removal of any fellow member Trustee who may be serving as a Trustee in violation of the Act. The vacancy or vacancies caused by such a removal shall be filled in accordance with Section 3.3 of this Article.

- 10 -

## ARTICLE IV

### Contributions and Collections

**Section 4.1 Employer Contributions.**

(a)    Each Employer shall make prompt contributions or payments to the Trust Fund in such amount and under the terms as are provided for in the applicable collective bargaining agreement in effect from time to time between the Employer or his bargaining representative and the Union or Local Union. An Employer may also be required to make contributions in such amount and under such terms as such Employer may be obligated, in writing, to make, provided that such contributions shall be subject to acceptance by the Trustees. The Employer agrees that such contributions shall constitute an absolute obligation to the Trust Fund, and such obligation shall not be subject to set-off or counter-claim which the Employer may have for any liability of the Union or Local Union, or of an Employee.

(b)    Contributions to the Fund shall be paid to the Trustees or to such depository as the Trustees shall designate, only by check, bank draft, money order or other recognized method of transmitting money or its equivalent, made payable to the order of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers. The payment of contributions shall be made periodically at such times as the Trustees shall specify by rules and regulations and such payment shall be accompanied by all information reasonably necessary to properly record such contributions in the Fund's records for each such Employee.

(c)    Each Employer shall be responsible only for the contributions payable by him on account of Employees covered by him, except as may be otherwise provided by law. Employer associations or groups shall not be responsible for the contributions, payments or other obligations of any other Employer, or otherwise.

(d)    **Work Outside Jurisdiction.** In the event an Employee employed by an Employer, as defined herein, shall perform work outside of the geographical jurisdiction of the Local Union, the Employer may continue to make payments to the Trust Fund and the Trustees may accept such payments.

**Section 4.2 Receipt of Payment and Other Property of Trust.** The Trustees or such other person or entity designated or appointed by the Trustees in accordance with Section 5.5 of Article V are hereby designated as the persons to receive the payments heretofore or hereafter made to the Trust Fund by the Employers. The Trustees are hereby vested with all right, title and interest in and to such moneys and all interest which may be accrued thereon, and are authorized to receive and be paid the same.

- 11 -

**Section 4.3 Collection and Enforcement of Payments.** The Trustees, or such committee of the Trustees as the Board of Trustees shall appoint, or the Chief Executive Officer if one has been appointed and when directed by such committee or by the Board of Trustees, shall have the power to demand, collect and receive Employer payments and all other money and property to which the Trustees may be entitled, and shall hold the same until applied to the purposes provided in this Trust Agreement. They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as the Trustees in their sole discretion determine to be in the best interest of the Trust Fund for the purpose of collecting such payments, money and property, without prejudice, however, to the rights of the Union or Local Union to take whatever steps it deems necessary and wishes to undertake for such purposes.

**Section 4.4 Production of Records.** Each Employer shall promptly furnish to the Trustees or its authorized representative, on demand, the names of all such Employer's Employees, their Social Security numbers, each Employee's Earnings Records, the number of hours worked by each Employee and all Federal and State payroll tax returns, and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose. The Trustees may, by their respective representatives, audit and examine the pertinent employment and payroll records of each Employer, as described above, at the Employer's place of business, whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund. The Union or Local Union shall, upon the request of the Trustees, promptly furnish information with respect to an Employee's employment status.

In addition, in the event the Employer does not maintain or otherwise does not have in his possession records of the number of hours worked by each Employee, the Employer agrees that in order to determine the number of hours for which contributions are required to be submitted to the Trust Fund, the Employee's gross wages shall be divided by the hourly wage scale set forth in the applicable collective bargaining agreement for such Employee's job classification.

**Section 4.5 Collection Costs.** In the event that upon audit made by the Trustees and/or upon other evidence it is found by the Trustees that an Employer has failed to make required Employer Contributions, the Trustees are authorized and empowered:

(a)    to impose and receive from such Employer all costs of the audit;

(b)    to assess and receive from such Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent, in that the failure of the Employer to make the required payment of Employer Contributions imposes additional burden and expense upon the Trustees in the collection thereof; in the administration of the Trust Fund, including but not limited to the

- 12 -

communication with said Employer; and, in addition thereto may cause a loss of benefits to employees, all of which are difficult of accurate ascertainment;

(c)    to assess and receive from such Employer the lost interest from the delinquent amounts, to be calculated at the rate of 9% simple interest;

(d)    to impose and receive from such Employer any amounts Trustees are required to pay for the benefit of an eligible Employee of such Employer, or an Employee who would be eligible except for the failure of such Employer to make required contributions in his behalf.

(e)    to impose and receive from such Employer all costs, audit expenses and attorneys fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise;

(f)    to require such Employer to make weekly deposits of Employer Contributions in an amount determined by the Trustees, based on objective standards, provided that the Trustees have given such Employer reasonable notice of such requirement for weekly deposits, the amount to be deposited, the date such deposits are due and the basis on which the weekly deposit is determined and required;

(g)    to require such Employer to furnish to the Trustees a bond, with reputable surety thereon,

    (1)    with the Trustees as obligees thereunder;

    (2)    in an amount, determined by the Trustees, consistent with the anticipated future obligations of such Employer;

    (3)    with notice provisions acceptable to the Trustees consistent with purposes of such bond.

**Section 4.6 Effect of Non-Payment.** Non-payment by any Employer, of any contribution or other moneys owed to the Fund shall not relieve any other Employer from his or its obligation to make required payments to the Trust Fund.

## ARTICLE V

### Powers and Duties of Trustees

**Section 5.1 Conduct of Trust Business.** The Trustees shall have general supervision of the operation of this Trust Fund and shall conduct the business and activities of the Trust Fund in accordance with this Trust Agreement and applicable law. The Trustees shall hold, manage and protect the Trust Fund and collect the income therefrom and contributions thereto. The Trustees may, in the course of conducting the business of the Trust, execute all instruments in the name of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, which instruments shall be signed by at least one Employer and one Employee Trustee, provided, however, any one Trustee or the Chief Executive Officer may execute legal documents to commence, settle and process law suits to enforce trust collections on behalf of the Trustees.

**Section 5.2 Use of Fund for Expenses.** The Trustees shall have the power and authority to use and apply the Trust Fund to pay or provide for the payment of all reasonable and necessary expenses: (a) of collecting the Employer contributions and payments and other moneys and property to which they may be entitled and (b) of administering the affairs of this Trust, including the employment of such administrative, legal, expert and clerical assistance, the purchase or lease of such premises, materials, supplies and equipment and the performance of such other acts, as the Trustees, in their sole discretion, find necessary or appropriate in the performance of their duties.

**Section 5.3 Use of Fund to Provide Benefits.** The Trustees shall also have the power and authority to use and apply the Trust Fund for the purpose of providing benefits and other conventional forms of retirement, disability and related benefits to eligible Participants and Beneficiaries in accordance with the terms, provisions and conditions of the Pension Plan to be formulated and agreed upon hereunder by the Trustees.

### Section 5.4 Investments.

(a)    The Trustees shall have the power and authority, in their sole discretion, to invest and reinvest such funds as are not necessary for current expenditures or liquid reserves, as they may from time to time determine, in such investments as are legal investments under applicable state and federal law relating to the investment of the employee pension trust funds, not limited, however, by any limitation restricting investments in common stocks to a percentage of the Fund or to a percentage of the total market value of the Fund. The Trustees may sell, exchange or otherwise dispose of such investments at any time and, from time to time, as provided in Section 5.10(f). The Trustees shall also have power and authority (in addition to, and not in limitation of, common law and statutory authority) to invest in any stocks, bonds or other property, real or personal,

- 14 -

including improved or unimproved real estate and equity interests in real estate, where such an investment appears to the Trustees, in their discretion and consistent with their fiduciary obligations, to be in the best interest of the Trust Fund and its Participants and Beneficiaries, judged by then prevailing business conditions and standards. The Trustees shall have the authority, in respect to any stocks, bonds or other property, real or personal, held by them as Trustees, to exercise all such rights, power and privileges as might be lawfully exercised by any person owning similar stocks, bonds or other property in his own right. The Trustees, in their discretion and to the extent they deem wise, beneficial or necessary may invest the Trust Fund or any part thereof in retirement annuity contracts, retirement income contracts, group contracts, and such other form of contracts provided that all such contracts are issued by legal reserve life insurance companies authorized to do business in the District of Columbia as may be selected by the Trustees, for the purpose of providing for all or a part of the benefits provided therein. In addition to the powers given to the Trustees by law, the Trustees shall have the power and in their discretion to purchase, sell and invest in securities, and options for the purchase and sale of securities, including, without limiting the generality of the foregoing, common stocks, preferred stocks, convertible preferred stocks, bonds, convertible bonds, commercial paper, bank acceptances, trade acceptances, depositary receipts, exchange traded funds, foreign exchange, warrants, stock options, puts, calls, future contracts and options on future contracts and where applicable options on the actual security itself including those on debt securities such as United States Treasury Bills, notes, bonds and GNMAs; and on equity indices such as the Standard and Poors 500 Stock Index, the New York Stock Exchange Stock Average, the Value Line Composite Stock Average, the CBOE 100 Index, the American Stock Exchange Index, and in connection therewith to use the capital and income of the Trust to pledge assets of the Trust, to purchase securities on margin, to sell securities short, to engage in arbitrage transactions, and to utilize any and all available techniques for securities transactions. Notwithstanding any other provision of this Agreement, the Trustees may cause any part or all of this Trust to be commingled with the money of trusts created by others. Money of this Trust so added to any commingled Fund at any time shall be subject to all of the provisions of the Declaration of Trust creating said commingled fund, as it is amended from time to time. Said Declaration of Trust creating the commingled fund is hereby made a part of this Agreement.

(b)    **Delegation and Allocation of Investment Functions.**

(1)    The Trustees are authorized, in their discretion, by resolution, to allocate to the Finance Committee such duties and responsibilities to invest and reinvest such Fund assets as they shall specify in such allocation in accordance with Section 5.7(f).

- 15 -

(2)    The Trustees shall have the power and authority to appoint one or more investment managers (as defined in Section 3(38) of the Act) who shall be responsible for the management, acquisition, disposition, investing and reinvesting of such of the assets of the Trust Fund as the Trustees shall specify. Any such appointment may be terminated by the Trustees upon written notice, or as specified in written agreements with such managers. The fees of such investment manager, and its expenses to the extent permitted by law, shall be paid out of the Trust Fund.

(3)    In connection with any allocation or delegation of investment functions under paragraphs (1) and (2) of this subsection (b), the Trustees shall from time to time adopt appropriate investment policies or guidelines.

**Section 5.5 Deposits and Disbursements.** All Trust Funds not invested shall be deposited by the Trustees in such depository or depositories as the Trustees shall from time to time select, and any such deposit or deposits, or disbursements therefrom, shall be made in the name of the Trust in the manner designated by the Trustees and upon the signature(s) of persons designated and authorized by the Trustees or by an investment manager appointed in accordance with Section 5.4(b)(2) of this Article.

**Section 5.6 Allocation and Delegation of Fiduciary Responsibilities.** The Trustees may, by resolution or administrative rule, or by provisions of this Trust Agreement, allocate fiduciary responsibilities and various administrative duties to committees or subcommittees of the Board of Trustees, and they may delegate such responsibilities and duties to other individuals as they may deem appropriate or necessary in their sole discretion and consistent with the Act.

**Section 5.7 Committees of the Board of Trustees.**

(a)    The standing committees of the Board of Trustees may consist of an Executive Committee, an Eligibility Committee, a Finance Committee, an Employer Accounts Committee, and such other standing committees as the Trustees may wish to create by bylaw or resolution.

(b)    **Appointment of Committee Members.** Each committee shall consist of an equal number of Employer and Employee Trustees. A quorum of a committee shall be as provided in Section 3.12(b). If the Employee Trustee group and/or the Employer Trustee group, respectively, nominate a Trustee of their group for membership on any committee, the Chairman shall appoint such nominee in filling any vacancy. Appointment as a member of any committee shall be communicated to the appointee by the Chief Executive Officer who shall promptly notify the Executive Committee thereof.

- 16 -

(c)  **Removal of Committee Members.** Any appointed member of any committee may be removed from membership in such committee by the group of Trustees appointing him at any time for any reason.

(d)  **Executive Committee.** The Trustees may appoint an Executive Committee which shall supervise the operation of the Trust Fund between meetings of the Board of Trustees. The Executive Committee shall formulate general or specific policies for submission to and consideration by the Board of Trustees. It shall advise the officers in matters of policy and administration not inconsistent with the Trust Agreement or with any policy or decision heretofore adopted or made by the Board of Trustees. Pending the convening of a meeting of the Board of Trustees, it shall decide and pass upon matters requiring immediate action, subject to ratification at the next meeting of the Board of Trustees to whom a report shall be made of any such immediate action, as well as of its recommendations. The Executive Committee shall also perform such other functions, duties and responsibilities as may be delegated or assigned to it by the Board of Trustees under the Trust Agreement and applicable laws, or as may be allocated to it pursuant to Sections 5.4(b) and 5.6 of this Article; any actions taken or duties performed under such allocation shall not be subject to ratification by the full Board of Trustees, unless such allocation expressly provides otherwise.

(e)  **Eligibility Committee.** The Trustees may appoint an Eligibility Committee which shall, in conjunction with the Chief Executive Officer, formulate rules and procedures for the processing of benefit applications, and the determination and payment of such benefits. The Chief Executive Officer shall make appropriate reports and recommendations in regard to such applications and determinations to the Trustees. The Chief Executive Officer and his staff shall review all applications for benefits with regard to eligibility and amount thereof and make appropriate determinations with respect thereto. As to any applicant for benefits whose claim for benefits has been denied the Chief Executive Officer shall give applicant adequate notice in writing thereof and, further, shall afford such applicant a reasonable opportunity for a fair review by the Trustees of the decision denying the claim for benefits.

(f)  **Finance Committee.** The Trustees may appoint a Finance Committee which shall review the investment policies of the Trustees and the activities of any investment managers which may have been appointed by the Trustees. It shall make appropriate recommendations to the full Board of Trustees on any matter entrusted to it. With respect to assets of the Trust Fund which the Trustees have not specified to be managed by an investment manager appointed pursuant to Section 5.4(b)(2) of this Article, and subject to such limitations and requirements as may be contained in this Trust Agreement or in the Act, the Trustees may allocate to the Finance Committee the authority to authorize and approve the investment of Trust Fund assets in investments permitted under Section 5.4(a),

- 17 -

subject to pertinent investment policies and guidelines adopted by the Board of Trustees.

(g)    **Employer Accounts Committee.** The Trustees may appoint an Employer Accounts Committee which shall formulate policies and procedures in regard to the collection of delinquent payments and contributions due the Fund. It shall collaborate with the Chief Executive Officer and with counsel in the administration of such policies and procedures and make appropriate reports and recommendations to the Trustees. The Trustees may allocate to the Employer Accounts Committee authority to initiate legal actions to collect any delinquent employer contributions or other obligations owed to the Trust Fund.

## Section 5.8 Chief Executive Officer.

(a)    The Trustees may employ or contract for the services of an individual, , to be known as "Chief Executive Officer", who shall, under the direction of the Trustees or under the direction of any appropriate committee of the Trustees, administer the office or offices of the Trust Fund and of the Trustees, coordinate and administer the accounting, bookkeeping and clerical services, provide for the coordination of actuarial services furnished by the consulting actuary, prepare (in cooperation where appropriate with the consulting actuary and independent auditor) all reports and other documents to be prepared, filed or disseminated by or on behalf of the Trust in accordance with law, assist in the collection of contributions required to be paid to the Trust Fund by Employers and perform such other duties and furnish such other services as may be assigned, delegated or directed or as may be contracted by or on behalf of the Trustees. The Chief Executive Officer shall be the custodian on behalf of the Trustees of all documents and other records of the Trustees and of the Trust Fund.

(b)    The Trustees are authorized and empowered and may at their discretion see to the preparation of and expenditure for instruction programs or seminars for the training and direction of administrative staff of the Trust, of Local Unions, of contract administrative managers, or of other entities retained or designated by the Trustees to perform required administrative services for the Trust.

## Section 5.9 Administrative Rules and Regulations.

(a)    The Trustees are hereby empowered and authorized to adopt Administrative Rules and Regulations and to promulgate any and all necessary rules and regulations which they deem necessary or desirable to facilitate the proper administration of the Trust Fund, provided the same are not inconsistent with the terms of this Trust Agreement. All such rules and regulations adopted by action of the Trustees shall be binding upon all parties hereto, all parties dealing with the Trust Fund and all persons claiming any benefits hereunder.

- 18 -

(b)    No such regulation, rule, action or determination made or adopted by the Trustees, nor any decision or determination made by any impartial umpire appointed pursuant to Section 3.13 of this Agreement, shall in any manner conflict or be inconsistent with any provision of the applicable current collective bargaining agreement in effect, or which may be made, between the Employer, the Union and the Local Union; with this Trust Agreement and with any applicable federal, state or local law.

**Section 5.10 Additional Authority.** The Trustees are hereby empowered, in addition to such other powers as are set forth herein or conferred by law:

(a)    to enter into any and all contracts and agreements for carrying out the terms of this Trust Agreement and for the administration of the Trust Fund, and to do all acts as they, in their discretion, may deem necessary or advisable, and such contracts and agreements and acts shall be binding and conclusive on the parties hereto and on the Participants involved;

(b)    to keep property and securities registered in the names of the Trustees or of the Fund or in the name of any other individual or entity duly designated by the Trustees;

(c)    to establish and accumulate as part of the Trust Fund such reasonable reserve funds as the Trustees, in their sole discretion, deem necessary or desirable to carry out the purposes of such Trust Fund;

(d)    to pay out of the Trust Fund all real and personal property taxes, income taxes, and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Trust Fund, or any money, property, or securities forming a part thereof;

(e)    to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder;

(f)    to sell, exchange, lease, convey, mortgage or dispose of any property, whether real or personal, at any time forming a part of the Trust Fund upon such terms as they may deem proper, and to execute and deliver any and all instruments of conveyance, lease, mortgage and transfer in connection therewith;

(g)    to establish and carry out a funding policy and method consistent with the objectives of the Pension Plan and the Act.

**Section 5.11 Bonds.** The Trustees shall obtain from an authorized surety company such bonds as may be required by law, covering such persons and in such amounts (but not less than required by law) as the Trustees, in their discretion, may determine. The cost of the premiums for such bonds shall be paid out of the Trust Fund.

- 19 -

Section 5.12 Insurance. The Trustees may in their discretion obtain and maintain policies of insurance, to the extent permitted by law, to insure themselves, the Trust Fund as such, its administrators and other fiduciaries, as well as employees, agents or the professional consultants of the Trustees and of the Trust Fund, while engaged in business and related activities for and on behalf of the Trust Fund (1) with respect to liability to others as a result of acts, errors or omissions of such individuals, respectively, provided such insurance policy shall provide recourse by the insurer against such individuals, as may be required by law and (2) with respect to accidental death or injuries received or property damage suffered by them. The cost of the premiums for such policies of insurance shall, where not prohibited by law, be paid out of the Trust Fund.

Section 5.13 Information to Participants and Beneficiaries. The Trustees shall provide Participants and Beneficiaries such information as may be required by law.

Section 5.14 Accountants and Actuaries. The Trustees shall engage one or more independent qualified public accountants and one or more enrolled actuaries to perform all services as may be required by applicable law and such other services as the Trustees may deem necessary.

Section 5.15 Trustees to Act Without Compensation. The Trustees shall act in such capacity without compensation, but they shall be entitled to reimbursement for the expenses properly and actually incurred in the performance of their duties with the Trust Fund, including without limitation, attendance at meetings and other functions of the Board of Trustees or its committees or while on business of the Board of Trustees, or on behalf of the Trust Fund.

Section 5.16 Reports. All reports required by law to be signed by one or more Trustees shall be signed by all of the Trustees, provided that all of the Trustees may appoint in writing, or by resolution adopted and spelled out in the minutes, one or more of their members to sign such report on behalf of the Trustees.

Section 5.17 Records of Trustee Transactions. The Trustees shall keep true and accurate books of account and a record of all of their transactions and meetings (including actions taken at such meetings and by informal action of the Trustees) which records and books shall be audited annually by a certified public accountant. A copy of the audit report shall be available for inspection by interested persons at the principal office of the Trustees.

Section 5.18 Construction and Determination by Trustees. Subject to the stated purposes of the Fund and the provisions of this Agreement, the Trustees shall have full and exclusive discretion to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters. They shall have full power to construe the provisions of this Agreement, the terms used herein and the

- 20 -

bylaws and regulations issued thereunder. Any such determination and any such construction adopted by the Trustees in good faith shall be binding upon all of the parties hereto and the Beneficiaries hereof. No matter respecting the foregoing or any difference arising thereunder or any matter involved in or arising under this Trust Agreement shall be subject to the grievance or arbitration procedure established in any collective bargaining agreement between the Association and the Union, provided, however, that this clause shall not affect the rights and liabilities of any of the parties under any of such collective bargaining agreements.

**Section 5.19 Liability.** The Trustees, to the extent permitted by applicable law, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

**Section 5.20 Reliance on Written Instruments.** Any Trustee, to the extent permitted by applicable law, may rely upon any instrument in writing purporting to have been signed by a majority of the Trustees as conclusive evidence of the fact that a majority of the Trustees have taken the action stated to have been taken in such instrument.

**Section 5.21 Reliance by Others.**

(a)    No party dealing with the Trustees shall be obligated (1) to see the application to the stated Trust purposes, of any funds or property of the Trust Fund or (2) to see that the terms of this Trust Agreement have been complied with or (3) to inquire into the necessity or expediency of any act of the Trustees.

(b)    Every instrument executed by the Trustees shall be conclusive evidence in favor of every person relying thereon (1) that at the time of the execution of said instrument, the Trust was in full force and effect, (2) that the instrument was executed in accordance with the terms and conditions of this Trust Agreement and (3) that the Trustees were duly authorized and empowered to execute the instrument.

**Section 5.22 Discharge of Liability.** The receipt by the Trustees for any money or property or checks (after such checks are honored at the bank and paid to the Trust Fund) shall discharge the person or persons paying or transferring the same, to the extent permitted by applicable state or federal law.

**Section 5.23 Establishment of Plan.** The Trustees shall design or formulate a Pension Plan for the payment of such retirement pension benefits, total and permanent disability benefits, death benefits, and related benefits, as are feasible. Such Pension Plan shall at all times comply with the applicable federal statutes and regulations and to the provisions of this Trust Agreement. The Trustees shall not be under any obligation to pay any pension if the payment of such pension will result in loss of the Trust Fund's tax exempt status under the then applicable Internal Revenue Code and any regulations or

- 21 -

rulings issued pursuant thereto. Said Trustees shall draft procedures, regulations, and conditions for the operation of the Pension Plan, including, by way of illustration and not limitation: conditions of eligibility for Participants and Beneficiaries, procedure for claiming benefits, schedules of type and amount of benefits to be paid, and procedure for the distribution of benefits. The Trustees may also provide for the payment of partial pensions, and may enter into agreements with other trustees of pension plans, which conform to the applicable sections of the then applicable Internal Revenue Code for purposes of tax deductions, for the reciprocal recognition of service credits and payments of pension benefits based upon such service credits.

**Section 5.24 Amendment of Plan.** The Pension Plan may be amended by the Trustees from time to time, provided that such amendments comply with the applicable sections of the then applicable Internal Revenue Code, all applicable federal statutes and regulations, the contract articles creating the Trust Fund, and the purposes as set forth in this Trust Agreement. Additionally and not by way of limitation, the Trustees may amend the Pension Plan, in future, or retroactively, where they deem it necessary to maintain the continuation of the Trust Fund's tax exempt status or to preserve compliance with the then applicable Internal Revenue Code, applicable federal statutes, and any regulations or rulings issued with respect thereto.

## ARTICLE VI

### Controversies and Disputes

**Section 6.1 Reliance on Records.** In any controversy, claim, demand, suit at law or other proceeding between any Participant, Beneficiary or any other person and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trustees, any instruments on file with the Trustees, with the Union or with the Employers, any facts certified to the Trustees by the Union or the Employers, any facts which are of public record and any other evidence pertinent to the issue involved.

**Section 6.2 Submission to Trustees.** All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in connection with the Trust Fund or the operation thereof, whether as to any claim for any benefits preferred by any Participant, Beneficiary or any other person, or whether as to the construction of the language or meaning of the bylaws, rules and regulations adopted by the Trustees or this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, and the decision of the Trustees shall be binding upon all persons dealing with the Trust Fund or claiming benefits thereunder.

**Section 6.3 Settling Disputes.** The Trustees may in their sole discretion compromise or settle any claim or controversy in such manner as they think best, and any majority decision made by the Trustees in compromise or settlement of a claim or controversy, or any compromise or settlement agreement entered into by the Trustees, shall be conclusive and binding on all parties interested in this Trust.

- 23 -

## ARTICLE VII

## Beneficial Rights

**Section 7.1 No Right, Title or Interest of Employers, Union and Local Union.** No Employer, Union or Local Union or Employees, or Participants and their Beneficiaries shall have any right, title or interest in or to the Trust Fund or any part thereof other than vesting under the Pension Plan. There shall be no pro rata or other distribution of any of the assets of the Trust Fund as a result of any Union or Local Union, Employer or group of Employees or Employers or Participants and their Beneficiaries, ceasing their participation in this Trust Fund for any purpose or reason except as required by law.

**Section 7.2 Limitations upon Beneficial Rights of Employees.** All the benefits shall be free from the interference and control of any creditor, and no benefits shall be subject to any assignment or other anticipation, nor to seizure or to sale under any legal, equitable or any other process, and in the event that any claim or benefit shall, because of any debt incurred by or resulting from any other claim or liability against any Employee, Participant or Beneficiary, by reason of any sale, assignment, transfer, encumbrance, anticipation or other disposition made or attempted by said Participant, Beneficiary or Employee, or by reason of any seizure or sale or attempted sale under any legal, equitable or other process, or in any suit or proceeding become payable, or be liable to become payable to any person other than the Participant or Beneficiary for whom the same is intended, as provided herein, pursuant hereto, the Trustees shall have power to withhold payment of such benefit to such Participant or Beneficiary until such assignment, transfer, encumbrance, anticipation or other disposition, writ or legal process is cancelled or withdrawn in such manner as shall be satisfactory to the Trustees. Until so cancelled or withdrawn, the Trustees shall have the right to use and apply the benefits as the Trustees may deem best, directly for the support and maintenance of such Participant or Beneficiary.

- 24 -

## ARTICLE VIII

## Termination of Trust

**Section 8.1 Conditions of Termination.** This Trust Agreement shall cease and terminate upon the happening of any one or more of the following events:

(a)    in the event the Trust Fund shall, in the opinion of the Trustees, be inadequate to carry out the intent and purpose of this Trust Agreement, or be inadequate to meet the payments due or to become due under this Trust Agreement and under the plan of benefits to Participants and Beneficiaries already drawing benefits;

(b)    in the event there are no individuals living who can qualify as Employees hereunder;

(c)    in the event of termination by action of the Union and the Participating Employers;

(d)    in the event of termination as may be otherwise provided by law.

**Section 8.2 Procedures in Event of Termination.**

(a)    In the event of termination, the Trustees shall:

(1)    make provision out of the Trust Fund for the payment of any and all obligations of the Trust, including expenses incurred up to the date of termination of the Trust and the expenses incidental to such termination;

(2)    arrange for a final audit and report of their transactions and accounts, for the purpose of termination of their Trusteeship;

(3)    give any notice and prepare and file any reports which may be required by law;

(4)    distribute the remaining assets among participants and beneficiaries of the Plan in the following order:

(A)    First, in the case of the benefits payable as an annuity—
(i)    in the case of a benefit of a Participant or Beneficiary which was in pay status as of the beginning of the 3-year period ending on the termination date of the Plan, to each such benefit based on the provisions of the Plan (as in effect

- 25 -

(ii)      in the case of a Participant's or Beneficiary's benefit which would have been in pay status as of the beginning of the 3-year period ending on the termination date of the Plan if the Participant had retired prior to the beginning of the 3-year period and if his benefits had commenced (in the normal form of an annuity under the Plan) as of the beginning of such period, to each such benefit based on the provisions of the Plan (as in effect during the 5-year period ending on such date) under which such benefit would be the least.

For the purposes of Subparagraph (i), the lowest benefit in pay status during a 3-year period shall be considered the benefit in pay status for such period.

(B)      Second, to all other nonforfeitable benefits (other than benefits becoming nonforfeitable solely on account of termination of the Plan) subject to the limitation that such nonforfeitable benefits shall not have an actuarial value which exceeds the actuarial value of a monthly benefit in the form of a life annuity commencing at age 65, equal to the lesser of—

        (i)      his average monthly gross income from his employer during the five (5) consecutive calendar year period during which his gross income from that employer was greater than during any other such period with that employer, or

        (ii)      $750 multiplied by a fraction, the numerator of which is the contribution and benefit base (determined under Section 230 of the Social Security Act) in effect at the time the Plan terminates and the denominator of which is such contribution and benefit base in effect in calendar year 1974.

(C)      Third, to all other nonforfeitable benefits under the Plan.

(D)      Fourth, to all other benefits under the Plan.

(b)    In the event of termination, the rights of all employees to benefits accrued to the date of termination shall be nonforfeitable.

- 26 -

## ARTICLE IX

### Miscellaneous

**Section 9.1 Law Applicable.** This Trust is created and accepted in the District of Columbia and all questions pertaining to the validity or construction of this Trust Agreement and of the acts and transactions of the parties hereto shall be determined in accordance with the laws of the District of Columbia, except as to matters governed by federal law.

**Section 9.2 Savings Clause.** Should any provision of this Agreement and Declaration of Trust be held to be unlawful, or unlawful as to any person or instance, such fact shall not adversely affect the other provisions herein contained or the application of said provisions to any other person or instance, unless such illegality shall make impossible the functioning of this Fund.

**Section 9.3 Other Employers and their Employees may Join the Plan.** The Trustees may extend the coverage of this Trust Agreement to such other parties and upon such terms and conditions as the Trustees shall determine, provided such parties are required to conform to the terms and conditions of this Trust Agreement and to make the same rate of contributions required of the Employers herein for the same schedule of benefits. Such other Employers and their Employees shall have no right to participate in the appointment or replacement of Trustees. The employees of such other employers shall be deemed to be Employees as defined in Section 1.3.

**Section 9.4 Reciprocity Agreements and Agreements with Other Trustees.** The Trustees may, in their sole discretion, enter into such reciprocity agreement or agreements with other pension funds as they determine to be in the best interests of the Trust Fund, provided that any such reciprocity agreement or agreements shall not be inconsistent with the terms of this Trust Agreement or the collective bargaining agreements under which this Trust Agreement is maintained.

The Trustees are hereby authorized to enter into agreements with trustees of other pension funds. In such agreements the Trustees may agree with the trustees of other such funds to exercise any and all of the powers, duties, rights or obligations granted the Board under the terms of its trust indenture, and may provide that any such agreements shall be binding on their successor trustees. Such agreements may also provide for reciprocity with regard to the continuation of eligibility of covered employees whose employment may be split geographically between the jurisdiction of two or more pension funds. However, the Trustees shall not enter into any reciprocal agreements unless:

1.    a collective bargaining agreement is in force between each such other Local Union and the employers within its jurisdiction, requiring contributions to be made to a pension fund;

- 27 -

2.    each of such other pension funds has been established on the basis of an agreement and declaration of trust, which permits the trustees of said fund(s) to enter into a reciprocal agreement with another fund;

3.    each of such other pension funds has an operative plan of pension benefits in effect as of the date the reciprocal agreement is concluded; and

4.    said operative plan of pension benefits is a qualified plan within the meaning of the applicable U.S. Treasury Department Regulations.

**Section 9.5 Merger.** The Trustees shall have the power to merge with any other fund established for similar purposes of this Trust Fund under the terms and conditions mutually agreeable to the respective Board of Trustees.

**Section 9.6 Refund of Contributions.** In no event shall any Employer, directly or indirectly, receive any refund on contributions made by them to the Trust (except in case of a bona fide erroneous payment or overpayment of contributions, to the extent permitted by law) nor shall an Employer directly or indirectly participate in the disposition of the Trust Fund upon termination or receive any benefits from the Trust Fund. Upon payment of contributions to the Trustees, all responsibilities of the Employer for each contribution shall cease, and the Employer shall have no responsibilities for the acts of the Trustees, nor shall an Employer be obliged to see to the application of any funds or property of the Trust or to see that the terms of the Trust have been complied with, except as provided by the applicable state or federal law.

## Section 9.7 Accounting and Judicial Settlements.

(a)    Accounting. The Union, the Local Union or an Employer may, at any time demand of the Trustees an accounting with respect to any and all accounts, provided that the party demanding such accounting agrees to pay the necessary expenses thereof.

(b)    Judicial Settlements and Action by Trustees. The Trustees shall be entitled, at any time, to have judicial settlement of their accounts and too seek judicial protection by any action or proceeding they determine necessary and, further, to obtain a judicial determination or declaratory judgment as to any question of construction of this Trust Agreement or for instructions as to any action thereunder and, further, as to any question relating to the discharge of their duties and obligations under, or in connection with the administration of, this Trust and as to the distribution of assets belonging to the Trust. Any such determination, decision or judgment shall be binding upon all parties to, or claiming under, this Trust Agreement.

**Section 9.8 Withholding Payment.** In the event any question or dispute shall arise as to the proper person or persons to whom any payments shall he made hereunder, the Trustees may withhold such payment until there shall have been made an adjudication of such question or dispute which, in the Trustees' sole judgment, is satisfactory to them, or until the Trustees shall have been fully protected against loss by means of such indemnification agreement or bond as they, in their sole judgment, determine to be adequate.

**Section 9.9 Gender** Whenever any words are used in this Trust Agreement in the masculine gender, they shall also be construed to include the feminine or neuter gender in all situations where they would so apply and wherever any words are used in the plural, they shall be also construed to include the singular.

**Section 9.10 Amendment of Trust Agreement.** The provisions of this Trust Agreement may be amended at any time by an instrument in writing executed by the Trustees, provided, however, in no event shall the Trust Fund be used for any purpose other than the purposes set forth in this Trust Agreement, and for the purposes of paying the necessary expenses incurred in the administration of this Trust.

**Section 9.11 Article and Section Titles.** The Article and Section titles are included solely for convenience and shall, in no event, be construed to affect or modify any part of the provisions of this Trust Agreement or be construed as part thereof.

**Section 9.12** Each Employer who is a party to this Agreement, and/or who submits contributions to the Trust Fund, agrees to notify in writing the office of the Chief Executive Officer should such Employer cease to have an obligation to submit contributions to the Trust Fund, or if such Employer conveys its assets to another party who does not have an obligation to contribute to the Trust Fund. In the event such a conveyance of assets does occur, the Employer-Conveyor also agrees to provide the office of the Chief Executive Officer the name, address and chief executive officer of the Receiver of its assets.

- 29 -

**IN WITNESS WHEREOF**, the Trustees have caused this Restated Agreement and Declaration of Trust to be executed this 15th day of January 2004.

_____          1/16/04
ROBERT P. MCCORMICK                          DATE

_____          1/16/04
FRANK HANLEY                                 DATE

_____          1/16/04
PAUL GEHL                                    DATE

_____          1/16/04
DALE A. MILLER                               DATE

_____          1/16/04
FRED DERESCHUK                               DATE

_____          1-16-04
JAMES MCLAUGHLIN                             DATE

_____          1-16-04
MICHAEL A. CARNEY                            DATE

_____          1/16/04
J. PATRICK TIELBORG                          DATE

_____          1/16/04
NOEL C. BORCK                                DATE

_____          1-16-04
PAUL C. BENSI                                DATE

- 30 -