UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UPSTATE NEW YORK ENGINEERS
HEALTH FUND, *et al.*,

                                        Plaintiffs,

        -against-                                           5:17-CV-0570 (LEK/DEP)

JOHN F. AND JOHN P. WENZEL
CONTRACTORS, INC., *et al.*,

                                        Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        Plaintiffs—the Upstate New York Engineers Health Fund, Upstate New York Engineers

Pension Fund, Upstate New York Engineers S.U.B. Fund, Upstate New York Engineers Training

Fund, Central Pension Fund of the International Union of Operating Engineers and Participating

Employers, and Local 106 Training and Apprenticeship Fund (collectively, the "Funds"), as well

as the Upstate New York Operating Engineers Local 158 (the "Union")—brought this action (by

and through their various managers and administrators) against John F. and John P. Wenzel

Contractors, Inc. ("Wenzel") and two of its officers, Mark C. Squires and David W. Squires,

alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"),

29 U.S.C. § 1001 *et seq.* Dkt. No. 48 ("TAC").[1] Now before the Court is Plaintiffs' motion to,

_____

        [1]  Plaintiffs' initial complaint, Dkt. No. 1 ("Complaint"), has been amended three times.
The first amended complaint, Dkt. No. 16 ("FAC"), was filed as a matter of course pursuant to
Rule 15(a)(1) of the Federal Rules of Civil Procedure, while the second and third amended
complaints, Dkt. No. 29 ("SAC"); TAC, were filed with Defendants' consent pursuant to Rule
15(a)(2). As of the filing date of this Memorandum-Decision and Order, the TAC remains the
operative pleading.

among other things, strike the third and fifth affirmative defenses asserted by Defendants. Dkt.

No. 41 ("Motion"); see also Dkt Nos. 41-12 ("Memorandum"), 44 ("Opposition Memorandum"),

50 ("Reply"), 50-1 ("Reply Memorandum").[2] For the reasons set forth below, Plaintiffs' Motion

is granted in part and denied in part.

## II.    BACKGROUND

### A.  Factual Background

According to the TAC, at all times relevant to the parties' dispute, Wenzel was an

"employer[] of employees covered by an employee benefit plan and multiemployer plan

maintained pursuant to [one of multiple] collective bargaining agreement[s]" entered into by

Wenzel and the Union. TAC ¶¶ 18, 23. Those agreements, referred to collectively in the TAC as

the "CBAs,"[3] subjected Wenzel to the "terms and conditions, rules[,] and regulations" set out in a

---

[2]  The Motion also included requests for a protective order "precluding discovery concerning an alleged past practice or alleged oral agreement," Mem. at 7, and an order precluding the depositions of certain witnesses, id. at 20–23. However, because those non-dispositive matters relate primarily to the discovery process, the Court hereby refers them to the Honorable David E. Peebles, U.S. Magistrate Judge, for resolution in light of the Court's holding in this Memorandum-Decision and Order.

[3]  The "CBAs" include: (1) the June 1, 2012 to February 28, 2015 Building Agreement Between "The Associations" and Local No. 158 of the International Union of Operating Engineers, Dkt. No. 41-6 at 2–44; (2) the June 1, 2015 to February 28, 2019 Building Agreement Between "The Associations" and Local No. 158 of the International Union of Operation Engineers, Dkt. No. 41-6 at 46–104; (3) the 2012–2015 Agreement Between Labor Relations Division of Albany Region, Rochester Region, Central New York Region, Associated General Contractors of New York State, LLC and International Union of Operating Engineers Local Union No. 158 Affiliated with the AFL-CIO, Dkt. No. 41-10 at 2–36; and (4) the 2015–2019 Heavy Highway Agreement Between Labor Relations Divisions of Albany Region, Rochester Region, Central New York Region, Associates General Contractors of New York State LLC and International Union of Operating Engineers Local Union No. 158 Affiliated with the AFL-CIO Labor Relations Division Associated General Contractors of New York State, LLC, Dkt. No. 41-10 at 38–73.

number of separate agreements to which Wenzel was not directly a party. Id. ¶ 24. The TAC calls

these separate agreements the "Trusts"[4] and "Collections Policy."[5] Pursuant to those contractual

relationships, Wenzel was obligated "in accordance with ERISA [s]ection 515," id. ¶ 18, to

"deduct from each of its employees' wages stipulated sums for each hour worked[,] and [to] pay

said amounts to the Union," id. ¶ 27.

Two audits conducted by Plaintiffs—on October 16–18, 2017, id. ¶ 30, and May 22,

2018, id. ¶ 32—revealed that Wenzel had failed to make a series of remittances allegedly owed

to the Funds under those agreements, resulting in a total deficiency of $253,757.26 "in

contributions and deductions," id. ¶ 34. Since being informed of that deficiency, Wenzel has

partially, but not fully, satisfied its debt. Id. ¶ 31. Plaintiffs therefore commenced this action to

retrieve the outstanding balance of $173,588.87 and obtain other relief. Id. ¶ 33.

### B. Procedural Background

Plaintiffs filed their initial Complaint on May 23, 2017, followed by their FAC on

October 24, 2017. Both those pleadings named as defendants only Wenzel and Mark Squires,

who filed a joint answer on October 26, 2017. Dkt. No. 19 ("FAC Answer"). On

---

[4] Plaintiffs use the term "Trusts" to refer to the following agreements: (1) the Agreement and Declaration of Trust of the Upstate New York Engineers Pension Fund, Dkt. No. 41-7 at 2–29; (2) the Agreement and Declaration of Trust of the Upstate New York Engineers Health Fund, Dkt. No. 41-7 at 31–60; (3) the Agreement and Declaration of Trust of the Upstate New York Engineers S.U.B. Fund; (4) the Agreement and Declaration of Trust of the Upstate New York Engineers Training Fund, Dkt. No. 41-8 at 2–31; (5) the Agreement and Declaration of Trust of the Local 106 Training Fund, Dkt. No. 41-8 at 33–54; and (6) the Agreement and Declaration of Trust of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, Dkt. No. 41-4 at 6–36.

[5] Plaintiffs use the term "Collections Policy" to refer to the Upstate New York Engineers' Funds' Collections Policy. Dkt. No. 41-10 at 75–89.

November 14, 2017, Judge Peebles held an initial pretrial conference and discovery began in earnest. Dkt. No. 26. Approximately four months later Plaintiffs filed their SAC, adding David Squires as a defendant. Defendants jointly filed an answer to that pleading on March 27, 2018. Dkt. No. 36 ("SAC Answer").

On September 6, 2018, Plaintiffs amended their pleading a third time, TAC, and Defendants once again answered, Dkt. No. 52 ("TAC Answer"). The TAC incorporates minor changes to Plaintiffs' damages calculation, TAC ¶¶ 29–34, and eliminates their request for an injunction against Defendants based on "further violations" of ERISA, the CBAs, the Trusts, and the Collections Policy, see SAC ¶¶ 80–87. However, the remainder of the TAC mirrors Plaintiffs' previous pleadings, and includes: (1) a compensatory damages claim pursuant to § 1145 (ERISA section 515) arising out of Wenzel's failure to remit contributions, TAC ¶¶ 21–34; (2) a claim for interest payments and liquidated damages due to Wenzel's untimely remittances, id. ¶¶ 35–38; (3) a claim for specific performance in the form of the "produc[tion of certain] books and records" by Wenzel to Plaintiffs, id. ¶¶ 39–48; (4) a contractual damages claim against Wenzel as provided for in the Funds' Collections Policy, id. ¶¶ 49–53; (5) a § 1104(a)(1)(A) (ERISA section 404(a)) claim against Mark Squires and David Squires for breach of their fiduciary duties, id. ¶¶ 54–72; and (6) a § 1106(b) (ERISA section 406(b)) claim against Mark Squires and David Squires for the impermissible use of assets owed to the Funds, id. ¶¶ 73–85.

The affirmative defenses asserted by Defendants also remained largely consistent over time. Compare FAC Answer at 2–3, with SAC Answer at 2–3, and TAC Answer at 2–3. As relevant to the present dispute, Defendants' third affirmative defense states as follows:

4

> Plaintiffs, or the Union representatives and agents, or both, knew or should have known that Defendants were allegedly not paying employee contributions in question to Plaintiffs, but were paying directly to employees and remained silent under such circumstances where they were obligated to notify Defendants of the discrepancy and failure to do so constitutes a breach of the contract and a breach of the covenant of good faith and fair dealing as between Defendants and Plaintiffs, therefore relieving Defendants of the obligations at least as to a portion of the claims stated in Plaintiff's complaint.

TAC Answer ¶ 9. And their fifth affirmative defense, which actually asserts a number of different equitable defenses, reads:

> Inasmuch as the complaint still seeks equitable relief, Plaintiffs are not entitled to any recovery based on the equitable defenses of Estoppel, Waiver, Unclean Hands, Bad Faith Dealings, Account Stated[,] and Laches.

Id. ¶ 11.

Approximately one month before filing their TAC, in an apparent effort to clear up some of the parties' still-outstanding discovery disputes, Plaintiffs filed the present Motion seeking, among other things, to strike Defendants' third and fifth affirmative defenses.[6] In it, they argue that those defenses would curtail the plaintiff benefit plans' ability under ERISA "to rely on the written agreements presented to them and to enforce those agreements." Mem. at 13[7] (internal quotation marks and citation omitted). Additionally, Plaintiffs contend that Defendants cannot raise the defenses of past practice or estoppel when, as here, "an ERISA plan's claim is based on

---

[6]  The timing of the Motion implies that Plaintiffs intended it to address the defenses raised in the SAC Answer, the then-operative responsive pleading. However, as already noted above, the differences between the SAC and TAC, as well as the SAC Answer and TAC Answer, are immaterial to the Motion. The Court will therefore decide the Motion as if brought in reference to the operative pleadings: Plaintiffs' TAC and Defendants' TAC Answer.

[7]  The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF")

clear and unambiguous contracts," id. at 16–17, and argue that Defendants' laches defense is improper, "[s]ince [Plaintiffs'] action for monetary damages was timely brought within the applicable statute of limitations," id. at 19–20. In response, Defendants allow that "Plaintiffs may be correct that [Defendants] cannot maintain [their] equitable defenses against the Union," but note that those defenses are still proper "against the Funds themselves." Opp'n Mem. at 8–9.[8]

On January 30, 2019, after reviewing the parties' arguments, the Court requested additional briefing "addressing the import of Cummings[ v. City of New York, 302 F. Supp. 3d 511, 524–25 (S.D.N.Y. 2017)] and other related caselaw to Defendants' past practices and estoppel defenses." Dkt. No. 55 ("January Text Order"). Both parties timely responded to that request by filing supplemental briefs, see Dkt. Nos. 56 ("Supplemental Memorandum"), 57 ("Supplemental Response"), which the Court will consider during the course of its analysis.

## III.    STANDARD OF REVIEW

### A.  Dispute Over the Proper Standard

The parties disagree as to the appropriate standard of review applicable to Plaintiffs' Motion. Plaintiffs argue that, because their "motion to strike . . . is based on facts and material outside the pleadings, [it] is the equivalent of a motion for partial summary judgment and should be considered by the Court [as such]." Mem. at 10 (citations omitted); see also Reply Mem. at 8–12.[9] Defendants, on the other hand, argue that "[t]he general rule regarding the review of motions to strike affirmative defenses is that . . . the [c]ourt will not consider matters outside the pleadings," and point out that courts have bucked that trend "only where . . . **both** parties clearly

---

[8]  The cited page numbers for this document refer to those generated by ECF.

[9]  The cited page numbers for this document refer to those generated by ECF.

view the motion . . . as a motion for summary judgment." Opp'n Mem. at 5–6 (internal quotation marks and citations omitted). The Court agrees with Defendants and finds that Plaintiffs have not shown that this case is ripe for summary judgment.

Generally, "extrinsic evidence . . . cannot be considered in a true motion to strike." Paretti v. Cavalier Label Co., Inc., 702 F. Supp. 81, 85 (S.D.N.Y. 1988) (citing Kramer v. Living Aluminum, Inc., 38 F.R.D. 347, 348 (S.D.N.Y. 1965)); see also Reis, Inc. v. Spring11 LLC, No. 15-CV-2836, 2016 WL 5390896, at *5 (S.D.N.Y. Sept. 26, 2016) (collecting cases in support of the proposition that, "on a motion under Rule 12(f)[,] the Court will not consider matters outside the pleadings"). Therefore, even though "conversion of a motion to strike into a motion for summary judgment is not explicitly authorized by the Federal Rules of Civil Procedure," id. (citations omitted), a "court may treat [a] motion [to strike] as one for partial summary judgment pursuant to Rule 56" when the parties submit motion papers that fall outside the norm of "true" Rule 12(f) motions, S.E.C. v. Alexander, 248 F.R.D. 108, 110 (E.D.N.Y. 2007).

For example, certain district courts have treated motions to strike as motions for partial summary judgment "when facts outside the pleadings [were] offered." All. Media Grp., Inc. v. Mogul Media, Inc., No. 02-CV-5252, 2005 WL 1804473, at *1 (E.D.N.Y. July 28, 2005). However, the submission of extrapleading material will typically only trigger summary judgment treatment when (1) both parties, rather than just one, submitted facts outside of the pleadings; and/or (2) the facts incorporated within that material are "necessary to the resolution of the issues presented." Liberty Mut. Ins. Co. v. Precision Valve Corp., 402 F. Supp. 2d 481, 484 (S.D.N.Y. 2005). Courts also seem inclined to convert motions to strike into partial summary

judgment motions where "both parties . . . view the motion, however styled, as a motion for summary judgment." Paretti, 702 F. Supp. at 85 (citing Gen. Tire & Rubber Co. v. Jefferson Chem. Co., 46 F.R.D. 607 (S.D.N.Y. 1969)); see also S.E.C. v. Alexander, No. 06-CV-3844, 2007 WL 2693680, at *1 (E.D.N.Y. Sept. 12, 2007) (converting the plaintiff's Rule 12(f) motion into a motion for partial summary judgment after noting that the parties "essentially treated the motion as one for summary judgment").

In the present case, Plaintiffs have attached a number of extrapleading materials to their Motion—including a statement of material facts, Dkt. No. 41-1 ("SMF"), and a number of affidavits and exhibits, Dkt. Nos. 41-2 to -11 (collectively, "Plaintiffs' Affidavits and Exhibits")—just as one might expect from a summary judgment movant. But the Opposition Memorandum states that Defendants "do[] not view Plaintiffs' motion as a motion for summary judgment, and submit[] that it should be decided on the pleadings alone and in accordance with . . . [Rule 12(f)]." Opp'n Mem. at 6. Also, a number of discovery disputes have prolonged the fact-finding process in the present case, Docket, February 20, 2018 Text Minute Entry ("February Minute Entry"); Docket, June 4, 2018 Text Minute Entry ("June Minute Entry"), and some have even made their way into the present Motion, see Mem. at 9–10, 20–23. Therefore, because the discovery process may not yet be complete, the Court is disinclined to credit Plaintiffs' representation that "both parties . . . have engaged in significant discovery" about the issues most relevant to the Motion. Reply Mem. at 10; see Toussie v. Allstate Ins. Co., 213 F. Supp. 3d 444, 445–46 ("[C]ourts routinely deny motions for summary judgment as premature when discovery over relevant matters is incomplete." (citations omitted)). Finally, the Court sees no need to reach beyond the pleadings in order to decide the Motion since, as explained in more

detail below, see infra Part III.C, the facts most relevant to it are available in the TAC and certain other documents "integral" to that pleading.

Accordingly, the Court will not convert Plaintiffs' Motion into a potentially premature motion for partial summary judgment, and will instead treat it as a "true" motion to strike subject to Rule 12(f)'s standards.

**B. Rule 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, "[i]t is well-established in this Circuit that '[a] motion to strike an affirmative defense under Rule 12(f) . . . for legal insufficiency is not favored.'" Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 271 (S.D.N.Y. 1999) (quoting William Z. Salcer, Panfeld, Edelman, v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984), vacated on other grounds and remanded, 478 U.S. 1015 (1986))). For a motion to strike an affirmative defense to succeed, it must be the case that both (1) "'the defenses presented are clearly insufficient;'" and (2) their "'inclusion . . . [will] result in prejudice to the plaintiff.'" Breedlove v. Cabou, 296 F. Supp. 2d 253, 275 (N.D.N.Y. 2003) (alteration in original) (quoting Canadian St. Regis Band of Mohawk Indians v. New York, 278 F. Supp. 2d 313, 332 (N.D.N.Y. 2003)). Thus, "a court will not grant a Rule 12(f) motion unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." Solvent Chem. Co. ICC Indus., Inc. v. E.I. Dupont De Nemours & Co., 242 F. Supp. 2d 196, 212 (W.D.N.Y. 2002) [hereinafter Solvent Chem.] (internal quotation marks and citation omitted).

### C. Materials the Court May Consider

As already noted above, "it is generally improper to consider matters outside the pleadings in ruling upon a motion to strike." Wine Mkts. Int'l, Inc., 177 F.R.D. at 134 (citing Index Fund, Inc. v. Hagopian, 107 F.R.D. 95, 100 (S.D.N.Y. 1985)). However, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citation omitted). Additionally, in deciding a Rule 12 motion, a court may consider a document not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,'" thereby "render[ing] the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F. 3d 69, 72 (2d Cir. 1995) (per curiam)).

Several courts in this Circuit have found that the agreements underlying a contractual dispute are "integral" to a related pleading—and, therefore, open to consideration on a Rule 12 motion—when the pleading "references [] the contracts and requests judicial interpretation of their terms." Chambers, 282 F.3d at 153, 153 n.4 (finding that contracts between recording artists and record companies were integral to complaint asserting, among other things, breach of contractual and fiduciary duties); see also Wilson v. Kellogg Co., 111 F. Supp. 3d 306, 311–12 (E.D.N.Y. 2015) (holding that online terms and conditions agreement was incorporated by reference into complaint—despite lack of references to that agreement within the pleading itself—because its terms were integral to plaintiff's ability to bring his breach of an implied contract and unjust enrichment claims); Millennium Health, LLC v. EmblemHealth, Inc., 240 F. Supp. 3d 276, 283–84 (S.D.N.Y. 2017) (finding that contracts between the parties were integral

to plaintiff's complaint since court would need to consider them in analyzing plaintiff's implied-in-fact contract claim). Plaintiffs' TAC references the CBAs, Trusts, and Collections Policy on numerous occasions, and each of Plaintiffs' six claims relies extensively on the terms set forth therein. See TAC ¶¶ 21–85. The Court therefore finds that those documents are integral to the pleading.

Accordingly, in conducting its analysis the Court will rely solely on facts drawn from the following documents: (1) the TAC; (2) the TAC Answer; (3) the CBAs; (4) the Trusts;[10] and (5) the Collections Policy. Notably, that list excludes all of the affidavits and declarations submitted by the parties along with their motion papers, as well as the Interrogatory Responses provided by Defendants.

## IV.    DISCUSSION

Plaintiffs raise three arguments in support of their request to strike Defendants' third and fifth affirmative defenses. First, citing to Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990), Plaintiffs argue that ERISA section 515 precludes Defendants from asserting their third and fifth affirmative defenses. Mem. at 13. Second, Plaintiffs contend that the language of the CBAs is "unambiguous and clear," meaning Defendants cannot in any event assert the defenses of past practice or estoppel. Id. at 16. Third, Plaintiffs argue that, because "[l]aches is not a defense to an action filed within the applicable statute of limitations," that

---

[10]   With the exception of the Agreement and Declaration of Trust of the Upstate New York Engineers S.U.B. Fund, which has not been made available to the Court.

defense does not apply to Plaintiffs' timely-filed suit. Id. at 19–20. The Court will examine each

of these three arguments in turn.[11]

## A. **Benson's Limitation on ERISA Defenses**

Section 515 of ERISA reads as follows:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

§ 1145. "'In recognition of the fact that millions of workers depend upon employee benefit trust

funds for their retirement security,'" Bricklayers & Allied Craftworkers Local 2 v. C.G. Yantch,

Inc., 316 F. Supp. 2d 130, 145 (N.D.N.Y. 2003) (quoting Southwest Adm'rs, Inc. v. Rozay's

Transfer, 791 F.2d 769, 773 (9th Cir. 1986)), and "because [benefit] plans must pay out to

beneficiaries whether or not employers live up to their obligations[,] . . . [t]he courts of appeals

that have construed section 515 have unanimously regarded it as a limitation on the defenses

available to an employer when sued by an employee benefit plan," Benson, 907 F.2d at 314.

---

[11] In their Reply Memorandum, Plaintiffs also argue in the alternative that Defendants' third and fifth affirmative defenses are "conclusory" and, therefore, "legally insufficient," since they fail to "set forth a short and pla[i]n statement of the facts." Reply Mem. at 10–11 (internal quotation marks and citation omitted). However, it is well settled in this Circuit that "the pleading of affirmative defenses is governed by Rule 8(c), [which] only requires a defendant to 'affirmatively state' an affirmative defense." Sibley v. Choice Hotels Int'l, Inc., 304 F.R.D. 125, 132 (E.D.N.Y. 2015) (citing Fed. R. Civ. P. 8(c)). And in any event, "[t]his Circuit has made clear it disfavors new issues being raised in reply papers." Rowley v. City of New York, No. 00-CV-1793, 2005 WL 2429514, at *5 (S.D.N.Y. Sept. 30, 2005) (citing Keeve v. Shalala, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995)); see also Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); Domino Media, Inc. v. Kranis, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) ("New arguments first raised in reply papers in *support* of a motion will not be considered." (citations omitted)). Accordingly, that alternative argument will not be considered by the Court.

Pursuant to that interpretation, "[o]nce an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." Id. In fact, "[t]he Second Circuit has recognized only two defenses to an action under [s]ection 515 to collect contributions pursuant to a CBA: (1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable)." Cent. N.Y. Laborers' Health v. JWJ Indus., Inc., No. 12-CV-1319, 2015 WL 12564221, at *15 (N.D.N.Y. Mar. 5, 2015) [hereinafter JWJ] (citing Benson, 907 F.2d at 314).

However, multiple courts in this Circuit have recognized an important distinction between (1) the defenses considered in Benson, which depend on "the formation and enforcement of the CBA;" and (2) defenses "focus[ed] on the actions of the Funds," which typically are not parties to such agreements. Trs. of Local 813 Ins. Trust Fund v. Wilner's Livery Serv., Inc., No. 11-CV-3180, 2012 WL 4327070, at *6 (E.D.N.Y. Sept. 19, 2012) [hereinafter Local 813]. Interpreting section 515 as referring solely to the "'conduct of the parties who negotiated and executed the writing which created § 1145 liability'"—in this case, the CBAs—those courts have allowed employers to raise as a defense against benefit funds any of their actions which amount to, among other things, "'laches, waiver, fraud, estoppel, misrepresentation, or accord and satisfaction.'" Williams v. Salt City Painting, Inc., No. 91-CV-320, 1992 WL 265944, at *12 (N.D.N.Y. Oct. 1, 1992) (quoting Ma. Laborers' Health & Welfare Fund v. Explosives Eng'g, Inc., 136 F.R.D. 24, 28 (D. Mass. 1991)).

Defendants' third and fifth affirmative defenses together assert the equitable defenses of estoppel, waiver, unclean hands, bad faith dealings, account stated, and laches.[12] TAC Answer ¶¶ 9, 11. The Court agrees with Plaintiffs that, to the extent Defendants attempt to maintain those defenses against the Union, that attempt fails. The Union was a party to the CBAs, and allowing Defendants to assert those defenses would call into question the Union's "ability to enforce th[ose] contract[s] as a whole." Benson 907 F.2d at 314. Even Defendants appear to tacitly concede that point, stating in their Opposition Memorandum that "Plaintiffs may be correct that Wenzel cannot maintain its equitable defenses against the Union." Opp'n Mem. at 8. Therefore, the Court finds that Defendants' third and fifth affirmative defenses cannot be maintained against the Union.

However, those defenses remain viable insofar as focused on the actions of the Funds themselves. Opp'n Mem. at 7–10; see also Local 813, 2012 WL 4327070, at *3–6 (striking affirmative defenses related to impossibility, no meeting of the minds, duress, public policy, and the union's majority status as precluded by section 515, but allowing affirmative defenses related to the plaintiff funds' misconduct and inaction, including laches, equitable estoppel, and unclean hands); Cent. N.Y. Laborers' Health by Moro v. Fahs Constr. Grp., Inc., No. 13-CV-226, 2017 WL 5160119, at *6 (N.D.N.Y. Apr. 5, 2017) [hereinafter Fahs] (allowing defendants to

---

[12] The Court finds that Defendants' third affirmative defense—which asserts that Plaintiffs "breach[ed] the contract and . . . the covenant of good faith and fair dealing" because they "knew or should have known that" Wenzel was paying contributions owed under the CBAs to its employees, rather than to Plaintiffs, TAC Answer ¶ 9—is duplicative of the equitable defenses of estoppel, unclean hands, and bad faith dealings asserted in Defendants' fifth affirmative defense, id. ¶ 11. Instead of raising a separate legal doctrine as a defense against Plaintiffs' claims, Defendants' third affirmative defense appears only to provide factual support and context for the estoppel, unclean hands, and bad faith defenses explicitly stated within their fifth affirmative defense.

assert, despite ERISA section 515, affirmative defenses of waiver, estoppel, laches, and failure to mitigate because those "focus[ed] on the actions of the Funds"); JWJ, 2015 WL 12564221, at *15 (refusing to strike affirmative defenses of "failure to state a cause of action, unclean hands, laches, actions/inactions, [and] equitable estoppel" in action brought pursuant to ERISA section 515).

In their Reply Memorandum, Plaintiffs attempt unsuccessfully to distinguish each of these cases. See Reply Mem. at 9 n.4. For example, Plaintiffs argue that the district court in Fahs only allowed defendants to assert the equitable defenses of waiver, estoppel, and laches because the "language of the contract was ambiguous and subject to differing interpretations." Id. However, the Fahs order nowhere states that the ambiguities in the relevant contract formed the basis for its decision to allow the defendants to assert the defenses at issue.

Plaintiffs also point out that, while the court in JWJ "declined to strike defenses of unclean hands, laches, and equitable estoppel, it nevertheless granted judgment in favor of the plaintiffs and against the company," reasoning that it was required to "'constrain its liability determination to the written terms of the CBA.'" Id. (quoting JWJ, 2015 WL 12564221, at *10). While technically correct, Plaintiffs' characterization of the JWJ holding is misleading. The court's order came following a motion filed by plaintiffs which incorporated two separate requests: (1) for summary judgment as to the plaintiffs' first, second, and fifth claims; and (2) for "dismissal of the defendants' affirmative defenses and counterclaims" as relevant to the plaintiffs' remaining claims. JWJ, 2015 WL 12564221, at *1. The court's decision granting judgment in favor of plaintiffs' first, second, and fifth claims—wherein it noted that it was

constrained to the written terms of the CBA, id. at *10—therefore had no impact at all on its refusal to strike defendants' unclean hands, laches, and estoppel defenses.

Finally, Plaintiffs appear to distinguish Local 813 by characterizing it as based on a "Rule 12 motion to strike brought within six months of filing action and prior to discovery." Reply Mem. at 9 n.4. However, Plaintiffs do not explain why the timing of a plaintiff's motion would impact a court's Benson analysis. The Court therefore interprets Plaintiffs' Local 813 parenthetical as focused on Defendants' affirmative defense of laches, which the Reply Memorandum elsewhere argues "is not a proper defense" since this action was "commenced within the statute of limitations." Id. at 11 n.3. That argument is considered in detail below, see infra Part IV.C, and has no bearing on the Benson issue.

Accordingly, the Court strikes Defendants' third and fifth affirmative defenses insofar as asserted against the Union, but finds that Benson does not preclude Defendants from asserting those defenses against the Funds.

### B. The Ambiguity of the CBAs

Plaintiffs also separately argue in their Memorandum that "[i]f an ERISA plan's claim is based on clear and unambiguous contracts, the claim is not subject to the defenses of past practice or estoppel." Mem. at 16. Plaintiffs therefore ask the Court to strike those specific defenses from Defendants' TAC Answer, since "the CBAs clearly require contributions on behalf of each [actual] hour worked by employees and cover all employees," not just "union members." Id. at 17 (internal quotation marks omitted).

### 1. Past Practices Defense

To assess Plaintiffs' argument as to Defendants' past practices defense, it is helpful to understand the analytical framework applicable to ERISA section 515 claims. Since "[b]enefit funds are not . . . 'entitled to enforce a nonexistent contractual obligation[,]' . . . [t]o prevail on an ERISA collection claim, [a f]und must in the first instance establish the existence and scope of the employer's contractual obligation." Bldg. Serv. 32BJ Health Fund v. Hughes Contracting Indus. Ltd., No. 14-CV-9581, 2017 WL 1208595, at *4 (S.D.N.Y. Mar. 31, 2017) (quoting DeVito v. Hempstead China Shop, Inc., 38 F.3d 651, 653–54 (2d Cir. 1994)). In other words, a plaintiff fund can only collect unpaid obligations owed by an employer pursuant to the terms of a CBA if that CBA actually imposes a contribution obligation on the employer. Id.; see also DeVito, 38 F.3d at 651 ("Although a variety of contract defenses would not preclude [plaintiffs] from enforcing their right to collect payments pursuant to the collective bargaining agreement, [they] are not entitled to enforce a nonexistent contractual obligation.").

In determining in the first instance whether a contractual obligation exists, "'traditional rules of contract interpretation apply as long as they are consistent with federal labor policies.'" Cummings, 302 F. Supp. 3d at 524 (quoting Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp., 230 F.3d 569, 576 (2d Cir. 2000) [hereinafter Aeronautical Indus.]). Pursuant to those rules, "[u]nambiguous provisions [in CBAs] should be enforced as written," id., but in the event that the provisions in a CBA are ambiguous, courts may "look to extrinsic factors—such as bargaining history, past practices, and other provisions in the CBA—to interpret the language in question," Aeronautical Indus., 230 F.3d at 576. In other words, by asserting a past practice defense, a defendant employer attempts to characterize certain of the provisions in the relevant

CBA as ambiguous and, as a result, argues that those provisions must be interpreted with regard to the employer's past practices with the union and/or benefit funds.

Plaintiffs vehemently dispute that the CBAs may be ambiguous, and argue that they (1) "clearly require contributions on behalf of each [actual] hour worked by employees;" (2) "cover all employees in the classifications of work listed in the CBAs;" and (3) "require contributions for employees" without "distinguish[ing] between union members and people who are not union members." Suppl. Mem. at 9–10 (internal quotation marks omitted). Notably, nowhere in their papers do Defendants offer a relevant counterargument, nor do they assert that past practices may be used to resolve an ambiguity in the CBAs. Instead, they accept "that the instant CBAs create an obligation to make contributions to the Funds," but maintain that they may still present extrinsic evidence concerning the parties' conduct to prove other affirmative defenses, such as "estoppel, waiver[,] and unclean hands, among others." Suppl. Resp. at 8–9.[13]

Accordingly, since Defendants' appear not to challenge the existence or unambiguous nature of the contribution obligation underlying Plaintiffs' section 515 claim, the Court finds that Defendants may not defend on the grounds that the parties' past practices change the meaning of the CBAs. That defense will therefore be struck from the TAC Answer.[14]

### 2. Estoppel Defense

The above analysis does not apply to Defendants' estoppel defense, however. The Court agrees with Defendants that, even if a CBA's terms unambiguously impose a contribution

---

[13]  The cited page numbers for this document refer to those generated by ECF.

[14]  In so holding, the Court is not excluding the possibility of discovery on the parties' conduct in performing the relevant contracts, since that conduct may be relevant to Defendants' surviving defenses.

obligation on an employer, <u>Benson</u> still allows that employer to raise equitable defenses against the funds themselves, including under an estoppel theory. <u>See generally</u> <u>supra</u> Part IV.A; <u>see also</u> <u>Local 813</u>, 2012 WL 4327070, at *3–6 (allowing equitable estoppel defense against plaintiff funds); <u>Fahs</u>, 2017 WL 5160119, at *6 (same); <u>JWJ</u>, 2015 WL 12564221, at *15 (same). Plaintiff objects that, even if <u>Benson</u> would theoretically allow an employer defendant to assert an estoppel defense against plaintiff benefit funds, Defendants in the present case "have not set forth any facts suggesting a misrepresentation by the . . . Funds that can estop [them] from collecting the contributions . . . required by the CBA." Suppl. Mem. at 13. However, at this stage of the litigation the burden lies squarely on Plaintiffs, rather than Defendants, to show "to a certainty that [they] would succeed despite any state of the facts which could be proved in support of" Defendants estoppel defense. <u>Solvent Chem.</u>, 242 F. Supp. 2d at 212. Thus, even if the Court agreed with Plaintiffs that Defendants have as yet failed to set forth evidence in support of their estoppel defense, that would not mean that Plaintiffs had satisfied their heavy burden under Rule 12(f).

Accordingly, the Court rejects Plaintiffs' argument regarding Defendants' estoppel defense, and will not strike that defense from the TAC Answer.

### C. Laches

"Laches is based on the maxim . . . 'equity aids the vigilant, not those who sleep on their rights.' It is an equitable defense that bars a plaintiff's . . . claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." <u>Ikelionwu v. United States</u>, 150 F.3d 233, 237 (2d Cir. 1998) (citing <u>Ivani Contracting Corp. v. City of New York</u>, 103 F.3d 257, 259 (2d Cir. 1997)) (internal quotation marks and citations omitted). To

prevail on a laches defense, a defendant must establish "(1) that he lacked knowledge that the claim might be asserted against him; (2) that the plaintiff delayed asserting the claim despite the opportunity to do so; and (3) that he would be prejudiced if the claim were now allowed to go forward." In re Gucci, 197 F. App'x 58, 60 (2d Cir. 2006) (citing Rapf v. Suffolk Cty., 755 F.2d 282, 292 (2d Cir. 1985)).

"Although laches is an equitable defense, employed instead of a statutory time-bar, analogous statutes of limitations remain an important determinant in the application of a laches defense." Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996). In fact, the Second Circuit has expressly stated that "[l]aches is not a defense to an action filed within the applicable statute of limitations." United States v. Repass, 688 F.2d 154, 158 (2d Cir. 1982); see also Ivani, 103 F.3d at 260 ("[W]hen a plaintiff brings a federal statutory claim seeking legal relief, laches cannot bar that claim, at least where the statute contains an express limitations period within which the action is timely."). Plaintiffs' suit, which was initially filed on May 23, 2017, addresses claims arising only since January 2014, TAC ¶ 30, well within ERISA's six-year statute of limitations. See U.S.W.U. Local 74 Welfare Fund ex rel. Alladeen v. Monticello Cent. Sch. Dist., No. 13-CV-1779, 2014 WL 2214211, at *2 (E.D.N.Y. May 28, 2014) ("[A]s a result of the decision by Congress not to create an ERISA action statute of limitations, the most analogous state statute of limitations controls. In actions to recover . . . delinquent contributions, the applicable statute of limitations is generally the six-year period prescribed by N.Y. C.P.L.R. § 213." (internal quotation marks and citations omitted)). Plaintiffs therefore ask the Court, citing to Repass and Ivani, to strike Defendants' laches defense as inapplicable to the present suit. Mem. at 20.

Defendants counter that <u>Ivani</u> was brought pursuant to 42 U.S.C. § 1983, not ERISA. Opp'n Mem. at 10 n.4. They therefore ask the Court to instead adopt the Seventh Circuit's reasoning in <u>Teamsters & Employers Welfare Trust of Illinois v. Gorman Brothers Ready Mix</u>, 283 F.3d 877, 880–82 (7th Cir. 2002), which criticizes <u>Ivani</u> and finds that "just as various tolling doctrines can be used to lengthen the period for suit specified in a statute of limitations, so laches can be used to contract it." For good measure, Defendants also note that "Plaintiffs do not cite a single case in which <u>Ivani</u> has been applied to bar a laches defense in an ERISA [section] 515 action," and state that their research has uncovered "only one such case[:]" <u>Alston v. 1749–1753 First Avenue Garage Corp.</u>, No. 12-CV-2767, 2015 WL 12564203 (E.D.N.Y. June 30, 2015). Opp'n Mem. at 10 n.4.

However, it appears that the picture is not so clear as either Plaintiffs or Defendants describe. True, the Supreme Court has held in the context of an ERISA withdrawal liability claim "that a defense of laches may apply to a claim that a plan did not notify an employer 'as soon as practicable' after withdrawal, even if still within the statute of limitations." <u>Amalgamated Lithographers of Am. v. Unz & Co. Inc.</u>, 670 F. Supp. 2d 214, 228–29 (S.D.N.Y. 2009) (citing <u>Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.</u>, 522 U.S. 192, 205 (1997)). And multiple Second Circuit decisions have hinted that a defendant may assert a laches defense even if the claim was brought within the applicable statute of limitations. <u>See, e.g.</u>, <u>Ikelionwu</u>, 150 F.3d at 238 ("[I]f the applicable legal statute of limitations has not expired, there is rarely an occasion to invoke the doctrine of laches."); <u>Conopco</u>, 95 F.3d at 191 ("When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to

show . . . circumstances exist which require the application of the doctrine of laches." (internal quotation marks and citation omitted)).

Nonetheless, multiple district courts have held within the ERISA context—though admittedly, not always within the context of a section 515 claim—that "laches within the term of the statute of limitations is no defense at law." Alston, 2015 WL 12564203, at *4; see also Harris Trust & Sav. Bank v. John Jancock Mut. Life Ins. Co., No. 83-CV-5401, 1997 WL 278116, at *2 (S.D.N.Y. May 23, 1997) ("[I]t is the law of this Circuit that laches may not be asserted as a defense if the applicable statute of limitations has not run. I can see no reason not to apply this rule to claims under ERISA." (internal citations omitted)); Wagner v. Metro. Life Ins. Co., No. 08-CV-11284, 2011 WL 2638143, at *8 (S.D.N.Y. Feb. 28, 2011) (same); Trustees of Hollow Metal Trust Fund v. FHA Firedoor Corp., No. 12-CV-7069, 2013 WL 1809673, at *3 (S.D.N.Y. Apr. 30, 2013) ("Since a six-year statute of limitations applies to ERISA claims brought under 29 U.S.C. § 1132, laches is not applicable to the Funds' claims." (internal citation omitted)); ILGWU Nat'l Ret. Fund v. Smart Modes of Cal., Inc., 735 F. Supp. 103, 106 (S.D.N.Y. 1990) ("[I]t is well-established that, where the applicable statute of limitations has not yet expired, the defense of laches is inapplicable.").

As best the Court can tell, no court in this Circuit has yet definitively answered the question: Can laches be asserted as a defense to an ERISA section 515 action that has been filed within the applicable statute of limitations? And without the benefit of more fulsome briefing—between them, the parties devoted a total of one paragraph and two footnotes to this issue—the Court will not attempt to resolve such a thorny debate. Instead, bearing in mind that a court should not grant a Rule 12(f) motion "unless it appears to a certainty that plaintiffs would

succeed," <u>William Z. Salcer</u>, 744 F.2d at 939, the Court will, at least for the moment, deny Plaintiffs' Motion and allow Defendants' laches defense to proceed.

## V.     CONCLUSION

According, it is hereby:

**ORDERED**, that Plaintiffs' Motion (Dkt. No. 41) is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Plaintiffs' request to strike Defendants' third and fifth affirmative defenses is **GRANTED as to (1) Defendants' past practice defense to Plaintiff's ERISA section 515 claim; and (2) all of Defendants' remaining equitable defenses insofar as asserted against the Union**; and it is further

**ORDERED**, that Plaintiffs' request to strike Defendants' third and fifth affirmative defenses is **DENIED in all other respects**; and it is further

**ORDERED**, that the remaining requests for relief contained in Plaintiffs' Motion—for (1) a protective order "precluding discovery concerning an alleged past practice or alleged oral agreement," Mem. at 7; and (2) an order precluding the depositions of certain witnesses, <u>id.</u> at 20–23—are **REFERRED** to the Magistrate Judge for resolution in light of the Court's findings in this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 14, 2019
              Albany, New York

Lawrence E. Kahn
U.S. District Judge